UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALONZO DEWITT PHILLIPS,

Plaintiff,

v.

CAROLYN W. COLVIN,

Defendant.

Case No.  13-cv-03533-WHO

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 20

The parties have filed cross-motions for summary judgment in this Social Security appeal. Plaintiff Alonzo Phillips suffers from a variety of impairments and believes that the Administrative Law Judge ("ALJ") erred in several respects.  Substantial evidence supports the ALJ's decision, however, and so the plaintiff's motion is DENIED and defendant's motion is GRANTED.

**BACKGROUND**

**I.      PROCEDURAL HISTORY**

On May 14, 2010, Phillips filed an application for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act.  Administrative Record ("AR") 20.  His application was denied initially and again on reconsideration. AR 77-81, 84-89.  Phillips requested a hearing and appeared before an ALJ on August 3, 2011.  AR 91, 111.  During this hearing, the ALJ rescheduled the hearing date so Phillips could obtain representation.  AR 72. Phillips retained an attorney and a second SSI hearing was held on November 2, 2011.  AR. 127, 129.  On November 15, 2011, the ALJ denied his claim for benefits.  AR 17.  On August 30, 2012, Phillips submitted a request for review to the Appeals Council.  AR 213-17.  The ALJ's denial became the Commissioner's final decision when the Appeals Council declined review on June 17,

2013.  AR 1.  Phillips filed this action for judicial review pursuant to 42 U.S.C. § 405(g).  Dkt. No. 1.

## II.    PHILLIPS'S IMPAIRMENTS

At the age of seven, Phillips suffered head trauma which resulted in loss of vision in his left eye.  AR 220.  When he applied for SSI in 2010, he indicated that he had been blind since January 1, 1975.  AR 154.  He suffers light sensitivity in his right eye and gets headaches.  AR 220.  His other ailments include a 2002 fracture in his right fibula and ankle which required pin stabilization.  AR 42, 239.  He also suffers from anxiety, particularly when he is around people.  AR 41, 316.

Phillips's highest grade of school completed is 11th grade.  AR 174.  He has been incarcerated three times, for ten years, one year, and four months, respectively.  AR 37-38, 251, 265.  His only reported work was as a full-time cashier at Goodwill in 2000 and then as a full-time food service worker at University of California, Berkeley from 2000-2003.  AR 179.  He periodically lives with his sister-in-law and sometimes helps by doing house chores and watching her young grandchildren.  AR 46-49.  Phillips has also lived in homeless shelters, although he prefers not to live in a shelter because he has "a problem with too many people."  AR 39.

Several medical professionals have reviewed Phillips physical impairments.  On July 16, 2007, Dr. Kala Swamynathan, an examining physician, conducted an ophthalmological examination on Phillips and concluded that there was no light perception on Phillips's left eye and 20/20 vision in his right eye.  AR 220, 222.  Phillips's right eye had pigmentation of the bulbar conjunctiva, and cysts and concretions in the inferior palpebral conjunctiva.  AR 220.  On August 3, 2007, state agency consultative physician Dr. Eskander determined that Phillips has limited overall vision and should avoid work requiring "good depth perception" and commercial driving.  AR 228-29.  On September 16, 2010, Dr. Eskander completed another assessment and noted that Phillips's field of vision was unlimited, but again concluded that Phillips should not participate in work requiring good depth perception, or commercial driving.  AR 272-73.  Dr. Eskander also determined that Phillips has no exertional or postural limitations.  AR 271-72.  On February 15, 2011, Dr. Spitz, a consultative physician, completed a physical RFC assessment and determined

United States District Court
Northern District of California

1   that Phillips's RFC precludes work requiring "good depth perception" such as "driving, work at

2   unprotected heights or with hazardous machinery" in light of his limited depth perception and

3   limited field of vision.  AR 296.  Dr. Spitz also determined that Phillips has no other exertional

4   limitations.  AR. 290.

5           Medical professionals have also reviewed Phillips psychological impairments.  On

6   February 22, 2010, a team of mental health treatment members at the California Department of

7   Corrections found that Phillips suffers from depression.  AR 250.[1]  However, they also concluded

8   that Phillips's intellectual functioning, concentration, attention, and memory were within normal

9   limits.  AR 249.  It was also determined that Phillips had a global assessment of functioning

10  (GAF) score of 65 which indicates "[s]ome mild symptoms (e.g., depressed mood and mild

11  insomnia) OR some difficulty in social, occupational, or school functioning ... but generally

12  functioning pretty well, has some meaningful interpersonal relationships."  AR 250; *Diagnostic*

13  *and Statistical Manual of Mental Disorders* 34 (4th ed. 2000).[2]  On February 15, 2011, State

14  agency non-examining consultative psychologist Dr. Davis conducted a psychiatric review of

15  Phillips's medical records and determined that Phillips did not have any difficulties in maintaining

16  concentration, persistence, or pace.  AR 308.

17          On February 22, 2011, Dr. Harinder Auluck, an examining psychiatrist, completed an

18  evaluation and concluded that "[Phillips's] ability to interact effectively with coworkers,

19  supervisors and members of the public is clearly compromised because of his increased anxiety

20  levels.  His ability to maintain an eight-hour workday or forty-hour workweek, on consistent basis,

21  is also compromised at the present time."  AR 317.  Phillips has "chemical diathesis for anxiety

22  and depressive disorder" and was diagnosed with anxiety disorder.  AR 316.  Furthermore,

23  Phillips is "likely to experience difficulty dealing with changes in routine work setting based on

24

25  [1] While it appears that F. Yoldi, a social worker, filled out the evaluation, other members of
    Phillips's treatment team, including psychologists, signed off on the report.  AR 250.
26  [2] The GAF scale reflects the "psychological, social, and occupational functioning on a
    hypothetical continuum of mental health-illness."  *Diagnostic and Statistical Manual of Mental*
27  *Disorders* 34 (4th ed. 2000).  However, GAF was not used in the DSM-5 "for several reasons,
    including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in
    its descriptors) and questionable psychometrics in routine practice."  Diagnostic and Statistical
28  Manual of Mental Disorders 16 (5th ed. 2013).

1    his psychiatric and physical problems." AR 317. Dr. Auluck also concluded that Phillips "is able

2    to understand, carry out and remember simple instructions." AR 317. Moreover, Phillips's

3    "thought processes were coherent … insight and judgment intact … intelligence is average …."

4    AR 316. Also, Dr. Auluck determined that Phillips's GAF score is 55 which indicates "moderate

5    symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate

6    difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-

7    workers)." AR 316; *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000).

8        In evaluating Phillips's disability claim, the ALJ determined that Phillips has the following

9    severe impairments: left eye blindness and depressive disorder. AR 22. The ALJ found no

10   evidence to show that claimant's 2002 ankle injury or bulging left eye represents a severe

11   impairment. AR 22, 42. At step three, the ALJ found that Phillips did not suffer from an

12   impairment or combination of impairments that met or equaled one of the listed impairments in 20

13   CFR Part 404, Subpart P, Appendix 1. AR 23. With respect to his mental impairment

14   ("paragraph B" criteria), the ALJ determined that "[i]n activities of daily living, claimant has mild

15   restriction. In social functioning, claimant has mild difficulties. With regard to concentration,

16   persistence or pace, claimant has moderate difficulties. As for episodes of decompensation,

17   claimant has experienced no episodes of decompensation, which have been of extended duration."

18   AR 23. The ALJ noted that "[t]he limitations identified in the 'paragraph B' criteria are not a

19   residual functional capacity assessment … [t]he mental residual functional capacity assessment

20   used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment …."

21   AR 23.

22       At step four, the ALJ  found that Phillips has the residual functional capacity ("RFC")[3] "to

23   perform a full range of work at all exertional levels but with the following nonexertional

24   limitations: "limitations to simple routine 1-2 step unskilled tasks with preclusion from interaction

25   with the general public and tandem work with coworkers." AR 23. The ALJ concluded that

26   plaintiff is also prohibited from working at heights and climbing ladders, ropes, or scaffolds. AR

27

28   ─────────────
     [3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20
     C.F.R. § 416.945.

United States District Court
Northern District of California

1    23.  Finally, Phillips was also precluded from work that requires depth perception.  AR 23-24.  At

2    the hearing, the vocational expert ("VE") testified that the claimant could, given the limitations,

3    perform at least three jobs that are sufficiently available in the local and national economy:

4    surveillance system monitor, housekeeper, and office helper.  AR 26.

5          In light of these findings, the ALJ found that Phillips was not disabled and not entitled to

6    SSI.  AR 26-27.

7                                    **LEGAL STANDARD**

8    **I.    DISABILITY DETERMINATION**

9          A claimant is "disabled" as defined by the Social Security Act if: (1) "he is unable to

10   engage in any substantial gainful activity by reason of any medically determinable physical or

11   mental impairment which can be expected to result in death or which has lasted or can be expected

12   to last for a continuous period of not less than twelve months," and (2) the impairment is "of such

13   severity that he not only unable to do his previous work but cannot, considering his age, education,

14   and work experience, engage in any other kind of substantial gainful work which exists in the

15   national economy."  42 U.S.C. §§ 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th

16   Cir. 2012).  To determine whether a claimant is disabled, an ALJ engages in a five-step sequential

17   analysis as required under 20 C.F.R § 404.1520(a)(4)(i)-(v).

18         In the first two steps of the evaluation, the claimant must establish that he or she (1) is not

19   performing substantial gainful activity, and (2) is under a "severe" impairment.  *Id*. §

20   416.920(a)(4)(i)-(ii).  An impairment must have lasted or be expected to last 12 months in order to

21   be considered severe.  *Id*. § 416.909.  In the third step, the claimant must establish that his or her

22   impairment meets or medically equals a listed impairment described in the administrative

23   regulations.  *Id*. § 416.920(a)(4)(iii).  If the claimant's impairment does not meet or equal one of

24   the listed impairments, before proceeding to the fourth step, the ALJ is to make a residual

25   functional capacity determination based on all the evidence in the record; this determination is

26   used to evaluate the claimant's work capacity for steps four and five.  *Id*. § 416.920(e).  In step

27   four, the claimant must establish that his or her impairment prevents the claimant from performing

28   relevant work he or she did in the past.  *Id*. § 416.920(a)(4)(iv).  The claimant bears the burden to

United States District Court
Northern District of California

5

prove steps one through four, as "[a]t all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits." *Id*. (alterations in original). Once the claimant has established this prima facie case, the burden shifts to the Commissioner to show at the fifth step that the clamant is able to do other work, and that there are significant number of jobs in the national economy that the claimant can do. *Id*. §§ 416.920(a)(4)(v),(g); 416.960(c).

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). If the legal error is harmless, then a reversal is unwarranted. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We may not reverse an ALJ's decision on account of an error that is harmless."). An error is harmless when it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

Phillips seeks summary judgment based on a number of arguments: (1) the ALJ erred in relying on the VE's testimony that conflicts with the *Dictionary of Occupational Titles* (DOT); (2) the ALJ's discussion of the VE's and Phillips's testimony is inaccurate; (3) the ALJ improperly rejected opinions of Dr. Auluck; (4) the ALJ improperly rejected opinions of Dr. Eskander; (5) the ALJ failed to include in her RFC finding her own determination that Phillips has moderate difficulties in concentration, persistence, or pace and other limitations; (6) the ALJ failed to fully develop the record; and (7) the ALJ improperly rejected Phillips's testimony.  Each will be addressed in turn below.

**I.      CONFLICT BETWEEN VE'S TESTIMONY AND THE DOT**

Phillips argues that the ALJ failed to resolve a conflict between the VE's testimony and the DOT which is a reversible error.  Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") at 8-9. The ALJ found that Phillips is limited "to simple routine 1-2 step unskilled tasks."  Phillips contends that this aligns with the DOT General Educational Development ("GED") Reasoning Level one which states, "Apply commonsense understanding to carry out simple one- or two-step instructions."  DOT 323.687-014.  The VE, on the other hand, concluded that Phillips could work as an office helper which requires GED Reasoning Level two and surveillance-system monitor which requires GED Reasoning Level three.  DOT 379.367-010, 239.567-010.  The Commissioner argues that the RFC limitations do not need to directly coincide with the GED reasoning levels and there were no conflicts between the VE's testimony and the DOT that required an inquiry and explanation by the ALJ.  Defendant's Motion for Summary Judgment ("Def. Mot.") at 15-18.

In *Massachi v. Astrue*, the Ninth Circuit held that an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles."  486 F.3d 1149, 1152 (9th Cir. 2007).  This holding stems from SSR 00–4p, which requires an ALJ to identify and provide an explanation for any conflict between the VE's testimony and information in the DOT.  *Id*. at 1152.

Since Phillips alleges multiple conflicts, I will assess each job and corresponding reasoning level.[4]

### A.  Surveillance-System Monitoring

I agree with Phillips that there appears to be a conflict between the requirements of the surveillance-systems monitor job, as described in the DOT as requiring a GED Reasoning Level of three, and Phillips's limitation to "simple routine 1-2 step unskilled tasks."  The Commissioner cites three cases to support the notion that a claimant limited to simple and repetitive work could perform a job with a Reasoning Level of three.  Two are inapplicable because they involved a non-detailed work restriction instead of simple, routine 1-2 step work. *See Pipkin v. Astrue*, 2013 WL 572079 (C.D. Cal. Feb. 13, 2013), *Gallo v. Comm'r of Soc. Sec. Admin.*, 2010 WL 545848 (N.D. Cal. Feb. 12, 2010).  The third is not persuasive because "[a]lthough the Ninth Circuit has yet to directly address the question, the majority of courts in this circuit have held that there is an apparent conflict when an ALJ determines that a person limited to simple, repetitive tasks can perform a job with a reasoning development level of 3."[5] *Adams v. Astrue*, 2011 WL 1833015, at *4 (N.D. Cal. May 13, 2011).[6]  Moreover, the ALJ instructed the VE that "there should be no interaction with the general public except superficially but not as a job description …."  AR 61. Surveillance-system monitoring requires a "significant" DOT level six which requires, "Talking

---

[4] Phillips is correct that there is overlap between the GED reasoning level and the RFC reasoning level required for a job.  However, the overlap is limited and a careful assessment of the different standards is required.  Pl. Reply 2; *see Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005) ("Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.")

[5] Phillips attempts to distinguish the phrase "simple, repetitive tasks" and "simple, routine one to two step tasks" by arguing that the use of "one to two step" is a more restrictive limitation.  Pl. Reply 3.  However, both phrases closely align with GED reasoning level one.  The phrase "simple, repetitive tasks" does not align with GED reasoning level two which states, "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  DOT 239.567-010.  The phrase "simple, repetitive tasks" is more restrictive than GED reasoning level two and better aligns with GED reasoning level one, which states, "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  DOT 323.687-014.

[6] *See also Carney v. Astrue*, 2010 WL 5060488, at *4–5 (C.D.Cal. Dec.6, 2010) (jobs with a reasoning level of 3 are unsuitable for someone limited to "simple, repetitive tasks"); *Burns v. Astrue*, 2010 WL 4795562, at *5–6 (C.D.Cal. Nov.18, 2010) (same); *Wright v. Astrue*, 2010 WL 4553441, at *4–5 (C.D.Cal. Nov.3, 2010) (same); *Torrez v. Astrue*, 2010 WL 2555847, at *8–9 (E.D.Cal. Jun.21, 2010) (same); *McGensy v. Astrue*, 2010 WL 1875810, at *3–4 (C.D.Cal. May 11, 2010) (same); *Pak v. Astrue*, 2009 WL 2151361, at *7 (C.D.Cal. Jul.14, 2009) (same); *Tudino v. Barnhart*, 2008 WL 4161443, at *11 (S.D.Cal. Sept.5, 2008) (same).

United States District Court
Northern District of California

with and/or signaling people to convey or exchange information" and a temperament requirement of "dealing with people." DOT 379.367-010, App. B. Since it is unclear whether "dealing with people" means dealing with the general public, this presents another conflict. *See Adams*, 2011 WL 1833015, at *6 ("[T]he VE created an apparent conflict when he testified that a person with a limitation in her ability to interact with the general public could perform a job that the DOT indicated requires an unspecified frequency of contact with unspecified people.").

### B. Office Helper and Housecleaner

The other two jobs identified by the VE do not pose any conflict. Phillips's restriction to "simple routine 1-2 step unskilled tasks" does not conflict with an office helper job because it requires a GED Reasoning Level of two. AR 23; s*ee Barrios v. Astrue*, 2010 WL 3825684 (E.D. Cal. Sept. 28, 2010) ("[T]here was no conflict that required resolution given the non-exertional limitation to 'simple one- and two step instructions' does not inherently preclude or conflict with performance of jobs which the DOT identifies as Reasoning Level Two."); *Meissl*, 403 F. Supp. 2d at 984 (holding that a limitation of "simple, repetitive tasks" does not conflict with the GED Reasoning Level of 2); *Smith v. Astrue*, 2011 WL 6749803 (E.D. Cal. Dec. 22, 2011) (holding that an office helper job with a DOT Reasoning Level two is consistent with the ALJ's RFC of "simple, repetitive tasks"); *see also Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008) ("[T]here was no conflict between the ALJ's step five determination that [claimant] could complete only simple tasks and the vocational expert's testimony that [claimant] could do jobs that the U.S. Department of Labor categorizes at 'Reasoning Level 2.'"); *Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008) ("[S]omeone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs."). Nor does "cleaner, housekeeper" present any conflict since it is a GED Reasoning Level one job.

Since two of the three jobs identified by the VE do not contain any conflicts with the DOT, there continues to be substantial support for the ALJ's determination that "the claimant is capable of making a successful adjustment to other work that exists in the significant numbers in the national economy." AR 27. The VE testified that "housekeeper (323.687-014), light, of which there are 250,000 jobs in the national economy and 3,700 jobs in the Bay area economy, and office

helper (239.567-010), of which there are 100,000 jobs in the national economy and 2,500 jobs in the Bay area economy." AR 26. This constitutes "significant numbers." *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir.1995) (2,300 jobs in the county and 64,000 nationwide are sufficient). Accordingly, the failure of the ALJ to inquire about the conflict between the VE's testimony and the DOT regarding the surveillance-system job is harmless. *See Molina*, 674 F.3d at 1115 ("[L]egal errors [are] harmless where it was clear they did not alter the ALJ's decision."); *Barrios v. Astrue*, 2010 WL 3825684 (E.D. Cal. Sept. 28, 2010) ("Following [claimant's] argument to its natural conclusion would leave this Court in the odd position of ordering a case remanded for further hearing to clarify a semantic conflict despite the fact that the end result would remain unchanged …."); *Smith*, WL 6749803 at *8 (holding that the ALJ's reliance on the VE's testimony was proper despite the conflict between the VE testimony and the DOT regarding one of the jobs the VE identified because the VE properly identified another job that has 8,000 available positions in California).

## II.   MISCHARACTERIZATION OF THE VE'S AND PHILLIPS'S TESTIMONY

Phillips argues that the ALJ mischaracterizes the VE's testimony in her decision when she said:

> [T]he vocational expert testified that, in his opinion, depth perception means distinguishing near and far and that if the claimant could not distinguish near and far, he could not perform any work based on that restriction alone. However, upon further questioning, the vocational expert testified that the DOT does *not* utilize that definition ….

AR 27. Phillips contends that "the VE did not testify that depth perception means distinguishing near and far and that the DOT does not utilize that definition." Pl. Mot. 12. Instead, Phillips asserts that the VE defined depth perception as "being able to see items at various distances and differentiate between those distances" and this is the standard used in the DOT. Pl. Mot. 12; AR 63-64. The Commissioner responds that the ALJ was referring to the VE's "extraneous discussions of the VE's own interpretation of what it means to have limited depth perception," but, ultimately, the VE provided the DOT definition of depth perception and identified jobs that do not require depth perception according to the DOT. Def. Mot. 18.

The VE made some confusing and conflicting initial comments about depth perception. The VE initially indicated, "All jobs require some depth perception if there is reaching. Some

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    depth perception is involved because if you're reaching for something, you need to be able to

2    obtain it." AR 61.  The VE testified that "I would say that there are no DOT codes at the light or

3    medium level or heavy level that don't require some depth perception because lifting and carrying

4    is part of the job." AR 63.

5         The ALJ acknowledged that "[depth perception is] a difficult thing to quantify" but then

6    redirected the VE to use the DOT categories of depth perception which are described as

7    "constant," "frequent," "occasional" or "none at all." AR 63-64.  The VE then explained that

8    according to the DOT, "[d]epth perception is a vocational term [that] means simply being able to

9    see items at various distances and differentiate between those distances. It requires binocular

10   vision." AR 63-64.  After being redirected, the VE correctly identified office helper,

11   cleaner/housekeeping, and surveillance-system monitor as jobs where depth perception is "[n]ot

12   present – [a]ctivity or condition does not exist." DOT 239.567-010, 323.687-014, 379.367-010;

13   AR 63-64.  Since the ALJ only relied on the VE's statements based on the DOT, there is no

14   reversible error and no conflict that needs to be resolved.

15        Phillips also argues that the ALJ misinterpreted his testimony and relied on improper

16   evidence in determining that Phillips had an adequate level of depth perception to work in the

17   three jobs identified by the VE.  In rejecting the VE's initial statement that all of the jobs would

18   require depth perception – and in support of the ALJ's reliance on the fact that the DOT did not

19   require specific depth perception for the jobs identified by the VE – the ALJ relied on evidence

20   that Phillips was able to work after his eye injury and was able to drive.  Specifically, the ALJ

21   concluded that "claimant worked successfully subsequent to his left eye injury as a material

22   handler and food service worker…." AR 26.  The ALJ also stated, "[Claimant] also testified that

23   he drove regularly without any restrictions on his driver's license up until it was suspended three

24   years ago…." AR 27.

25        Plaintiff argues the ALJ ignored evidence that Phillips's eyesight has progressively gotten

26   worse, specifically, that his right eye is stressed and sensitive to light.  Pl. Mot. 13; AR 39.

27   However, there is no evidence from either Phillips or any physician regarding how his right eye

28   has "gotten worse" or evidence that problems with the right eye further limited Phillips's ability to

11

1  work in terms of his depth perception. [7]  The ALJ's observation that Phillips worked successfully

2  after his eye injury, therefore, is not inaccurate and not a basis to find error.

3      While it is true that Phillips testified that he had a license, it was suspended three years

4  ago, and there is no testimony about whether he drove regularly (AR 46).  However, the ALJ's

5  mischaracterization (that Phillips testified he had been driving regularly) is a harmless error

6  because there is other ample evidence in the record that ALJ relied on to determine that Phillips's

7  eye issues did not preclude him from working in any of the three jobs identified by the VE.  *See*

8  *Molina*, 674 F.3d at 1115 (holding "errors harmless where the ALJ misstated the facts about the

9  claimant, but we were able to conclude from the record that the ALJ would have reached the same

10  result absent the error.").

## III.    DR. AULUCK'S OPINION

12      Phillips argues that the ALJ did not properly incorporate or reject Dr. Auluck's opinions

13  that Phillips's ability to maintain an eight-hour workday or a forty-hour workweek, or his ability

14  to deal with changes in a routine work setting were "compromised."[8]  Pl. Mot. 13-14. The

15  Commissioner responds that the ALJ did not reject these opinions, but rather gave them "some

16  weight" and appropriately considered them when determining Phillips's RFC limitations.  Def.

17  Mot. 8-9; AR 25.

18      The Ninth Circuit classifies the three types of physicians that can provide information on a

19  claimant as: "(1) those who treat the claimant (treating physicians); (2) those who examine but do

20  not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

21  claimant (nonexamining physicians)."  *Lester v. Charter*, 81 F.3d 821, 830 (9th Cir.1995).  In

[7] At the ALJ hearing, Phillips testified his right eye was "stressed" and sensitive to light.   Dr. Swamynathan, an examining physician, indicates that "[p]atient also notes increasing prominence of his left eye over the last few years. Also complains of excess light sensitivity in his right eye." AR 39, 220.  However, this is not evidence of "vision loss" or deterioration of his right eye and his left eye, except for the bulging, appears stable.

[8] Phillips also argues that the ALJ did not properly address Dr. Auluck's opinion that Phillips's ability to work with the general public and coworkers is "clearly compromised." The ALJ adequately addressed these limitations by including in the RFC that Phillips is limited from working with the general public and tandem work with coworkers.  AR 23.  Contrary to Phillips's argument, a limitation on tandem work with coworkers is not substantially different from working effectively with coworkers.  Mot. 14.

United States District Court
Northern District of California

1    order to properly reject an uncontradicted opinion of a treating or examining doctor, the ALJ must

2    state clear and convincing reasons that are supported by substantial evidence. *Id*. at 830–31.  An

3    ALJ may reject a doctor's opinion that is contradicted by another doctor by stating specific and

4    legitimate reasons that are supported by substantial evidence.  *Id.*

5        In this case, the ALJ did not improperly reject Dr. Auluck's, an examining doctor's,

6    opinion that Phillips's ability to maintain an eight-hour workday or a forty-hour workweek and his

7    ability to deal with changes in a routine work setting were compromised.  First, Dr. Auluck did not

8    say that Phillips was completely incapable of maintaining an eight-hour workday or a forty-hour

9    workweek or dealing with changes in a routine work setting.[9]  AR 317.  Dr. Auluck opined that

10   these areas were compromised, but did not specify why and to what extent.  AR 317.  Second, the

11   ALJ considered Dr. Auluck's opinion when concluding that "the above limitations including

12   preclusion from working with the general public and preclusion from tandem work with

13   coworkers, adequately address [sic] Dr. Auluck's opined concerns regarding maintain an eight-

14   hour or forty-hour workweek and dealing with changes in the routine work setting."  AR 25.

15   Although Dr. Auluck did not specify why these areas were compromised, Dr. Auluck did note that

16   "claimant's thought processes were coherent … insight and judgment were intact … intelligence is

17   average …."  AR 316.  Dr. Auluck also determined that claimant's limitations include "chemical

18   diathesis for anxiety and depressive disorder."  *Id*.  Moreover, Dr. Auluck diagnosed Phillips with

19   anxiety disorder and noted that Phillips feels anxious in crowded places.  AR 316-17.

20       Dr. Auluck's concern over Phillips's ability to maintain an eight-hour workday or a forty-

21   hour workweek and deal with changes in a routine work setting appears to stem from Phillips's

22   anxiety, in which case minimal direct contact with others is a plausible way to address Dr.

23   Auluck's concerns about Phillips's "compromised" abilities.  *See Sample v. Schweiker*, 694 F.2d

24   639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences

25   logically flowing from the evidence.").  Moreover, since Dr. Auluck's use of "compromised" was

26

27   _____

     [9] I am not persuaded by plaintiff's argument that Dr. Auluck's opinion supports a finding of
     disability because Phillips's abilities in these areas are "compromised" and the term compromised
28   correlates to a "substantial loss."  Mot. 9-10.  Plaintiff cites no authority to support this
     correlation.

13

ambiguous, the ALJ is responsible for resolving discrepancies. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) ("The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity."); *see also Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995). I must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Morgan,* 169 F.3d at 599. Here, the ALJ expressly addressed Dr. Auluck's concerns by limiting Phillips's work to simple routine 1-2 step unskilled tasks and limiting him from working with the general public and preclusion from tandem work with coworkers. That determination is supported by the evidence in the record as a whole. In the absence of any other medical opinion restricting Phillips's ability as to the duration of his work days and weeks or changes to a work schedule, substantial evidence supports the ALJ's decision.

## IV.   DR. ESKANDER'S OPINION

Phillips contends that the ALJ improperly rejected Dr. Eskander's opinion that Phillips has a limited field of vision. Pl. Mot. 16. Phillips notes that "[a]lthough the ALJ's RFC finding included limitations in depth perception and hazards, it did not include limitations in Mr. Phillips's field of vision." Mot. 17. I conclude that the ALJ properly considered and addressed the totality of Dr. Eskander's opinions.

To support his argument, Phillips relies on Dr. Eskander's August 2007 assessment, where Dr. Eskander checked the box indicating limited field of vision. AR 228. Dr. Eskander then explained that Phillips was blind in his left eye and should engage in "no work requiring good depth perception" and commercial driving. *Id.* In a 2010 assessment, Dr. Eskander checked the box for "unlimited" field of vision, and again included comments that Phillips was blind in the left eye, had 20/20 vision in his right, and that he should not participate in work requiring "good" depth perception. AR 272. Dr. Eskander explained that his findings suggest the "only functional limitations are due to visual limitations in depth perception, etc." AR 275. There is nothing in either the 2007 or the 2010 assessment by Dr. Eskander to suggest that Phillips's field of vision is limited in any significant way other than as a result of the left eye blindness and loss of "good" depth perception, conditions adequately addressed by the ALJ. It was also not error to rely on the more recent RFC from Dr. Eskander which did not note a limited field of vision. *Cf. Stone v.*

14

*Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) ("Because [claimant's] condition was progressively deteriorating, the most recent medical report is the most probative.").  In the  absence of any evidence that Phillips's right eye created issues with his field of vision (separate and apart from the left eye blindness affecting depth perception), the ALJ did not err in not mentioning the checked box for limited field of vision on the 2007 assessment.

Additional support for the ALJ's conclusion that Phillips was limited primarily in terms of depth perception and related issues from his left eye blindness comes from Dr. Spitz who explained that there is no pathology showing that the right eye suffered from severe visual loss. AR 296.  Dr. Spitz concluded that because of the left eye blindness, Phillips's RFC "precludes work requiring good depth perception such as driving, work at unprotected heights or with hazardous machinery (limited depth perception, limited field of vision, avoid concentrated exposure to hazards)."  AR 296.  In sum, the ALJ properly considered Dr. Eskander's 2007 and 2010 opinions and, in light of other evidence, properly considered Phillips's limitations based on his impaired depth perception from his left eye blindness.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."); *Morgan*, F.3d at 601 ("Where medical reports are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'") (quoting *Sample*, 694 F.2d at 642).

## V.  LIMITATION IN CONCENTRATION, PERSISTENCE, OR PACE

Phillips argues that the ALJ failed to include in her RFC that Phillips has moderate difficulties in concentration, persistence, or pace which the ALJ noted at step three of her analysis. Pl. Mot. 17; AR 23.  The Commissioner responds that a finding of a moderate limitation at step three does not require a particular RFC finding since the assessment used at steps four and five uses a more detailed assessment of the claimant's limitations.  Def. Mot. 13.  Furthermore, the Commissioner asserts that the ALJ's "limitation to simple routine 1-2 step unskilled tasks" sufficiently addresses Phillips's moderate limitation in concentration, persistence, or pace.  Def. Mot. 13-14.

Phillips misconstrues the RFC assessment.  Moderate limitations do not have to be exactly

1    mirrored in the RFC determination. *See Brink v. Astrue*, 2013 WL 1785803, at *5 (D. Or. Apr. 24,

2    2013) ("It is well-established in this District that the term moderate does not necessarily indicate a

3    degree of limitation that must be expressly reflected in the RFC assessment.") (internal quotation

4    marks and citation omitted).  As relevant here, a moderate difficulty in concentration, persistence,

5    or pace does not automatically translate to a RFC finding with these limitations.  *See Sabin v.*

6    *Astrue*, 337 F. App'x 617, 621 (9th Cir. 2009) ("The ALJ determined the end result of [claimant's]

7    moderate difficulties as to concentration, persistence, or pace was that she could do simple and

8    repetitive tasks on a consistent basis."); *Murray v. Colvin*, 2014 WL 1396408, at *4 (N.D. Cal.

9    Apr. 10, 2014) ("Accordingly, the ALJ did not err in determining Plaintiff's mental RFC.

10   Consistent with the medical evidence in the record, the ALJ properly translated Plaintiff's

11   moderate limitations with respect to concentration, persistence or pace into a limitation to one-to-

12   two step instructions.") (internal quotation marks and citation omitted).

13        The relevant inquiry is whether the medical evidence supports a particular RFC finding.

14   "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration,

15   persistence, or pace where the assessment is consistent with restrictions identified in the medical

16   testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). In *Stubb-*

17   *Danielson*, the court determined that the plaintiff's difficulties in concentration, persistence, and

18   pace translated to a RFC of "simple tasks" in accordance with the medical evidence which

19   included "Dr. McCollum's 2005 MRFCA, which found [plaintiff] is 'not significantly limited' in

20   her ability to 'carry out very short simple instructions'...."  539 F.3d at 1174.  This is analogous to

21   this case.  Although the ALJ noted that the Phillips had moderate difficulty in concentration,

22   persistence, and pace, the medical evidence supports the ALJ's RFC limitation to "simple routine

23   1-2 step unskilled tasks."  During a mental status examination in 2010, Phillips's treatment team at

24   the CDC determined that his concentration, attention, and memory were within normal limits.  AR

25   249.  Dr. Auluck also concluded that Phillips "is able to understand, carry out and remember

26   simple instructions."  AR 317.  Dr. Davis conducted a psychiatric review in 2011 and also

27   determined that Phillips did not have any difficulties in maintaining concentration, persistence, or

28   pace.  AR 308. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (holding that it is

United States District Court
Northern District of California

16

1   "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial

2   evidence in the record."); *Dupree v. Astrue*, 2011 WL 651886 (C.D. Cal. Feb. 10, 2011) ("[A]

3   limitation *must be* included in the RFC determination *only where* the record provides substantial

4   evidence of such limitations.") (emphasis in the original).[10]

5          Phillips does not cite to any medical evidence to the contrary.  Instead, Phillips relies on

6   *Brink v. Commissioner SSA* where the court found that a restriction to "simple, repetitive work"

7   did not accurately depict the plaintiff's restrictions in concentration, persistence, and pace based

8   on the medical evidence provided in that case.[11]  343 Fed Appx. 211, at *212 (9th Cir. 2009); Pl.

9   Mot. 17.  As mentioned above, the medical evidence here supports a RFC limitation of "simple

10  routine 1-2 step unskilled tasks."  The ALJ's RFC assessment and hypothetical to the VE were

11  consistent with the medical evidence and sufficiently addressed Phillips's limitations.

12  **VI.      FURTHER DEVELOP THE RECORD ON PHILLIPS ANKLE INJURY**

13         Phillips argues the ALJ failed to fully develop the record pertaining to his ankle injury.  Pl.

14  Mot. 18.  Phillips testified to this injury and his inability to walk for long periods of time, but the

15  ALJ found that there was "insufficient evidence that claimant's alleged old right ankle injury

16  represents a severe impairment."  AR 22.  The Commissioner asserts that the ALJ does not have a

17  duty to further develop the record when the record is clear and the ALJ gave specific reasons why

18  she did not find that Phillips's injury represents a severe impairment.  Def. Mot. 23.

19         An ALJ has a duty to fully and fairly develop the record in certain situations.  *See Brown v.

20  Heckler*, 713 F.2d 441, 443 (9th Cir.1983) ("In Social Security cases the ALJ has a special duty to

21  fully and fairly develop the record and to assure that the claimant's interests are considered.").

22  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence

23

24  _____

25  [10] This also addresses Phillips's argument that the hypothetical provided to the VE was deficient
    because it did not include the difficulty in concentration, persistence, and pace limitation.  Pl. Mot.
    23.  The hypothetical posed by the VE does not have to include every limitation, only those
    consistent with the medical evidence.  Moreover, as discussed in this section, the hypothetical
    posed by the ALJ adequately captured Phillips's limitations.

26

27  [11] On remand the court reconsidered the medical evidence and held that "[i]n this case, the medical
    opinions and other evidence support a finding that plaintiff is capable of simple, repetitive tasks,
    consisting of one to three steps, despite any moderate limitations in concentration, persistence, or
    pace." *Brink v. Astrue*, 2013 WL 1785803, at *6 (D. Or. Apr. 24, 2013).

28

1    or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v.*

2    *Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  There is a heightened duty to develop the

3    record when the claimant is not represented by a lawyer.  *Tonapetyan v. Halter*, 242 F.3d 1144,

4    1150 (9th Cir. 2001) ("When the claimant is unrepresented, however, the ALJ must be especially

5    diligent in exploring for all the relevant facts.").

6           In the present case, Phillips was represented by a lawyer so there was no heightened duty

7    to develop the record.  The evidence about his ankle injury was not ambiguous or inadequate.  Dr.

8    Auluck noted that Phillips "alleges chronic pain and anxiety … [a]s described, he has difficulty

9    walking more than a half block or so.  He also has difficulty standing for prolonged periods of

10   time."  AR 317.  These observations were the results of Phillips's statements, not medical

11   evidence.  Two State agency physicians determined that Phillips had no exertional or postural

12   limitations.  AR 271-70, 290-91.  A medical assessment completed in 2010 did not indicate any

13   physical disabilities.  AR 245.  Additionally, as the ALJ explained, Phillips did not allege any

14   orthopedic impairments on his initial disability report, appeals disability report, or 2011 brief.  AR

15   22, 174, 192, 194, 202, 207-10.  Since the evidence is not ambiguous, it was Phillips's duty to

16   provide evidence of a severe impairment.  *See Mayes*, 276 F.3d at 459 ("It was [claimant's] duty

17   to prove that she was disabled."); 42 U.S.C. § 423(d)(5) (Supp. 2001) ("An individual shall not be

18   considered to be under a disability unless he furnishes such medical and other evidence of the

19   existence thereof as the Secretary may require.").  Phillips presents no evidence that his injury

20   represents a severe impairment beyond his subjective testimony in the hearing and his subjective

21   comments, as reported by Dr. Auluck, but that testimony is not supported by any physician or

22   treatment records.   AR. 42-43.  I find that the ALJ was not required to further develop the record.

23   **VII.    PHILLIPS'S CREDIBILITY**

24          Phillips also challenges the ALJ's rejection of his testimony regarding the intensity,

25   persistence, and limiting effects of his symptoms arguing that the ALJ's reasons were not clear

26   and convincing.  Pl. Mot. 20.  Phillips testified that his impairments include inability to be around

27   others because of anxiety and inability to stand or walk for prolonged periods of time because of

28   an ankle injury.  AR 42, 52-53.  The ALJ held that "claimant's medically determinable

United States District Court
Northern District of California

18

1   impairments could reasonably be expected to cause the alleged symptoms; however, claimant's

2   statements concerning the intensity, persistence and limiting effects of these symptoms are not

3   credible …." AR 24. The Commissioner contends that the ALJ properly supported Phillips's

4   credibility findings by discussing Phillips's lack of medical treatment, inconsistent statements,

5   GAF score, and reported daily living activities. Def. Mot. 19-23.

6          An ALJ may discredit the testimony of a claimant because "[a]n ALJ cannot be required to

7   believe every allegation of disabling pain, or else disability benefits would be available for the

8   asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603

9   (9th Cir. 1989). Even if a claimant provides "medical evidence showing that he has an ailment

10  reasonably expected to produce some pain; many medical conditions produce pain not severe

11  enough to preclude gainful employment." *Id*. However, the "ALJ may reject the claimant's

12  testimony regarding the severity of her symptoms only if he makes specific findings stating clear

13  and convincing reasons for doing so." *Smolen*, 80 F.3d at 1284; SSR 96-7p (credibility finding

14  "must be sufficiently specific to make clear to the individual and to any subsequent reviewer the

15  weight the adjudicator gave to the individual's statements and the reasons for that weight.").

16  "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for

17  truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and

18  unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of

19  treatment." *Orn*, 495 F.3d at 636 (internal quotation marks and citation omitted). However, if the

20  ALJ provides an adequate reasons for discrediting claimant's testimony and "the ALJ's finding is

21  supporting by substantial evidence, the court may not engage in second-guessing." *Tommaseeti*,

22  533 F3d at 1039. (internal quotation marks and citation omitted).

23          The ALJ gave four reasons for rejecting Phillips's testimony. I will consider each reason

24  in turn.

25          **A. Medical Treatment**

26          First, the ALJ found that "claimant's lack of recent health care indicative that his alleged

27  impairments are not as severe as alleged. Notwithstanding claimant's testimony that he had just

28  recently obtained CMSP coverage, the undersigned notes that claimant was released from prison

in April 2010 and has sought relatively minimal medical treatment through the date of the hearing." AR 24-25. Phillips argues that "he had no insurance until just before the hearing" and that "the inability of a claimant to afford the cost of treatment is not a valid reason for finding that person not disabled." Pl. Mot. 21. Phillips testified that he obtained medical insurance three weeks before the hearing. AR 36. Phillips also testified that he had health insurance for less than a year, but the last time he received medical treatment was in prison. AR 36. Although there was a period when Phillips's insurance expired and he had no health insurance, Phillips apparently did not seek medical treatment during the period when he did have health insurance. Therefore, it is proper for an ALJ to consider Phillips's lack of treatment during the period when he had health insurance in assessing claimant's credibility. See *Molina*, 674 F.3d at 1113 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") (internal quotations and citation omitted); SSR 96–7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").

**B. GAF Score**

Phillips alleges that the ALJ improperly relied on medical evidence, specifically the GAF score provided by Phillips's examining physician in prison. Phillips contends that this score does not correlate to disability severity requirements. That may be true. *See McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008) ("The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.'" (quoting 65 Fed.Reg. 50,746, 50,765)). However, an ALJ can still consider a claimant's GAF score when considering claimant's general functional abilities. *See Graham v. Astrue*, 385 F. App'x 704, 706 (9th Cir. 2010) ("[Claimant] correctly points out that the GAF scores are not dispositive … [b]ut the GAF scores are nonetheless relevant."). It was permissible for the ALJ to consider Phillips's GAF level as evidence that Phillips's impairments are not as severe as he alleges. *See Smolen*, 80 F.3d at 1284 ("In evaluating the credibility of the

United States District Court
Northern District of California

symptom testimony, the ALJ must also consider the factors set out in SSR 88–13. Those factors include the claimant's work record and observations of treating and examining physicians … functional restrictions caused by the symptoms….") (internal citations omitted).[12]

### C.  Inconsistent Testimony

Phillips testified during the hearing that he would be able to perform a job the ALJ described as one "where you could sit and it was a job where you could do it alone for the most part, you wouldn't have to lift or carry anything heavy" as long as he knew what he was doing. AR 50.  Moreover, the ALJ noted that "claimant testified that he has been looking for work online."  AR 25.  Phillips argues that his willingness to engage in the ALJ's hypothetical does not mean that he can actually participate in such an activity.  Pl. Mot. 22.  Additionally, Phillips contends that his job search is not inconsistent with allegations of disability since it is required by the general assistance program.  *Id*.  The Commissioner responds that the ALJ appropriately relied on Phillips's statements regarding ability and intent to work when determining the claimant's credibility about his symptoms.  Def. Mot. 23.

It is permissible for the ALJ to consider the totality of the claimant's testimony, especially testimony that indicates that the claimant is willing to and thinks he is able to engage in some types of work that contradict his application for disability benefits.  The ALJ is allowed to consider conflicting statements when determining whether or not the claimant is being truthful in describing the severity of his disability.  *See Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir.1997) (holding that the ALJ may properly consider inconsistencies within testimony or between testimony and conduct in weighing credibility); *Smolen*, 80 F.3d at 1284 ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's

---

[12] Plaintiff cites *Schneider v. Commissioner of Social Security Administration* which is distinguishable because the claimant in that case had "'changed circumstances' to overcome the presumption that she is not disabled" which included a drop in GAF score and changed diagnosis to include Dysthymic Disorder and Personality Disorder. 223 F.3d 968, 974 (9th Cir. 2000). Additionally, claimant's doctor "stated that he now believed that [claimant] was 'substantially incapacitate[d]' and that she had a 'marked disability in maintaining appropriate and expected social functioning.'" *Id*.

1    reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony

2    by the claimant that appears less than candid….").

3    **D.  Daily Activities**

4         The ALJ found "claimant's activities of daily living, including doing some housework,

5    laundry, preparing simple meals for himself, watching movies daily and going to NA meetings

6    indicative of a greater capacity for work activity than he is willing to acknowledge."  AR 25.

7    Phillips contends that his ability to do home activities does not preclude a finding of disability

8    since these activities are not transferable to work activities.  Pl. Mot. 22-23.  The Commissioner

9    responds that the ALJ properly considered these daily activities and these activities show that the

10   claimant was exaggerating his limitations.  Def. Mot. 21.

11        A claimant's ability to complete household activities does not preclude a finding of

12   disability.  *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly

13   asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery

14   shopping, driving a car, or limited walking for exercise, does not in any way detract from her

15   credibility as to her overall disability.").  A claimant does not need to be "utterly incapacitated" in

16   order for the ALJ to find the claimant disabled.  *Fair*, 885 F.2d at 603.  There are two ways,

17   however, that an ALJ can use daily activities to form the basis of an adverse credibility

18   determination:  if the claimant's activity contradicts his testimony or if the claimant's activity

19   meets the threshold for transferable work skills. *Orn*, 495 F.3d at 639.   *Id*.

20        Phillips's testimony about his activities of daily living is in conflict. He contends that he

21   cannot work because of his anxiety.  AR 41.  He alleges that he is prevented from working

22   because "if someone is too close" claimant finds himself "angry and then to lash out."  AR 41.

23   Despite this, he testified that he goes weekly NA meetings, spends time with his sister-in-law, and

24   watches her grandchildren multiple days a week.  AR 47, 49.  The ALJ did not err in relying on

25   these admitted activities to discount Phillips's credibility as to the severity of  his anxiety and

26   inability to maintain close proximity to others.  *Molina*, 674 F.3d at 1113 ("The ALJ could

27   reasonably conclude that [claimants'] activities, including walking her two grandchildren to and

28   from school, attending church, shopping, and taking walks, undermined her claims that she was

United States District Court
Northern District of California

incapable of being around people ….").  Additionally, Phillips contends that he cannot walk or stand for prolonged periods of time, yet he also testified that he makes himself simple meals, washes some dishes, and picks up around the house after the children.  AR 47-48.  The ALJ appropriately relied on this testimony in considering his credibility regarding the severity of his alleged leg/ankle impairment.  *See Molina*, 674 F.3d at 1112 ("[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

In sum, the ALJ properly considered Phillips's lack of medical treatment and Phillips's inconsistent testimony to support an adverse credibility finding.

## CONCLUSION

For the reasons above, Phillips's motion for summary judgment is DENIED, and the Commissioner's motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: August 5, 2014

_____
WILLIAM H. ORRICK
United States District Judge